[No. 5405.   Decided March 29, 1905.]

OKANOGAN COUNTY *et al., Appellants,* v. EDITH M.

CHEETHAM, *Respondent.*[1]

HIGHWAYS—OVER PUBLIC LANDS—GRANT OF CONGRESS—CON-
STRUCTION—ACCEPTANCE BY USER—COUNTY COMMISSIONER'S AC-
CEPTANCE.   U. S. R. S. §2477, granting a right of way for the con-
struction of highways over public lands, is a grant *in praesenti*
becoming effective upon user by the public without any formal
action on the part of the state; and actual continuous user for
seven years by the general public before entry by a homesteader,
constitutes such acceptance of the grant; and an acceptance by
the county commissioners under Laws 1903, p. 155, is not neces-
sary, that act providing that nothing therein contained shall in-
validate "acceptance of such grant by general public use."

SAME—PRESCRIPTION.   In such a case, the ten years user re-
quired for prescription is not essential, as it is not a question of
prescription, but one of acceptance of a grant.

Appeal from a judgment of the superior court for Oka-
nogan county, Martin, J., entered May 24, 1904, dis-
missing an action to establish a highway and enjoin ob-
struction thereof, upon sustaining a demurrer to the com-
plaint.   Reversed.

*E. K. Pendergast,* for appellants, contended, among other
things, that U. S. Revised Statutes, § 2477, grants an
absolute right of way *in praesenti.   Wells v. Pennington
County,* 2 S. D. 1, 48 N. W. 305; *Smith v. Pennington
County,* 2 S. D. 14, 48 N. W. 309; *Wisconsin Cent. R.
Co. v. Price County,* 133 U. S. 496, 10 Sup. Ct. 341;
*Id.,* 11 Rose's Notes, U. S. Rep., 895; *Jamestown etc.
R. Co. v. Jones,* 177 U. S. 125, 20 Sup. Ct. 568; *Noble
v. Union River Log. R. Co.,* 147 U. S. 165, 13 Sup. Ct.
271.   The grant was accepted by the actual location and
user of the road, prior to respondent's homestead settle-

[1]Reported in 80 Pac. 262.

ment.   *Denver etc. R. Co. v. Alling,* 99 U. S. 463; *Da-
kota Cent. R. Co. v. Downey,* 8 Land Dec. 115; *Cincin-
nati v. White,* 6 Peters 431, 8 L. Ed. 452.   The re-
spondent took subject to the prior use by the public.
*Simonson v. Thompson,* 25 Minn. 450; *Colman v. St.
Paul etc. R. Co.,* 38 Minn. 260, 36 N. W. 638; *St. Joseph
etc. R. Co. v. Baldwin,* 103 U. S. 426.   Prior to the is-
suance of the patent, she acquired no vested rights that she
could assert against the government to prevent its convey-
ance for other purposes.   *Frisbie v. Whitney,* 9 Wall. 187;
*The Yosemite Valley Case,* 15 Wall. 77; *Allen v. Forrest,*
8 Wash. 700, 36 Pac. 971, 24 L. R. A. 606; *Washington
etc. R. Co. v. Osborn,* 160 U. S. 103, 16 Sup. Ct. 219;
10 Rose's Notes, U. S. Rep., 71; *Buxton v. Traver,*
130 U. S. 232, 9 Sup. Ct. 509; *Northern Pac. R. Co. v.
Colburn,* 164 U. S. 383, 17 Sup. Ct. 98; *Northern Pac.
R. Co. v. Smith,* 171 U. S. 260, 18 Sup. Ct. 794; *Tarpey
v. Madsen,* 178 U. S. 215, 20 Sup. Ct. 849; *Campbell v.
Wade,* 132 U. S. 34, 10 Sup. Ct. 9.

*Alvin W. Barry,* for respondent, contended, among
other things, that the respondent, by virtue of her entry
and occupancy, became possessed of the land, subject only
to the reserved rights of the United States.   *Weber v.
Laidler,* 26 Wash. 144, 66 Pac. 400; *Thredgill v. Pintard,*
12 How.   24; *Tarpey v. Madsen,* 178 U. S. 215, 20
Sup. Ct. 849; *Kinman v. Appleby,* 32 Land Dec. 526;
*Lang v. Morey,* 40 Minn. 396, 42 N. W. 88, 12 Am. St.
748; *Wilcox v. John,* 21 Colo. 367, 40 Pac. 880, 52 Am.
St. 246; *Skinner v. Reynick,* 10 Neb. 323, 6 N. W. 369,
35 Am. Rep. 479.   This entitled her to notice and hearing
in any proceeding instituted for the establishment of a
highway, and also to compensation for the land appro-
priated.   *Yakima County v. Tullar,* 3 Wash. T. 393, 17
Pac. 885; *Wendel v. Spokane County,* 27 Wash. 121, 67

Pac. 576. Something more than mere user is required to establish a highway. Bal. Code, §3846; *State v. Horlacher*, 16 Wash. 325, 47 Pac. 748; *State v. Horn*, 35 Kan. 717, 12 Pac. 148; *Fox v. Virgin*, 5 Ill. App. 515. Grants of rights of way by act of Congress for railway purposes have frequently been held to carry the fee, upon the designation or completion of the road, and it is in such cases only that congressional grants take effect *in praesenti*. *McAlpine v. Chicago Great West. R. Co.*, 68 Kan. 207, 75 Pac. 73, 64 L. R. A. 85; *Missouri etc. R. Co. v. Roberts*, 152 U. S. 114, 14 Sup. Ct. 496; *Joy v. St. Louis*, 138 U. S. 1, 11 Sup. Ct. 243; *New Mexico v. U. S. Trust Co.*, 172 U. S. 171, 19 Sup. Ct. 128. A right of way for road purposes does not carry with it the fee. *Kripp v. Curtis*, 71 Cal. 62, 11 Pac. 879; *Dubuque v. Mahoney*, 9 Iowa 450; 15 Am. & Eng. Ency. Law, 415, 416. A public highway is one that is under the control of, and kept up by, the public and cannot be made such by resolution. *Kennedy v. Williams*, 87 N. C. 6; *Kinnare v. Gregory*, 55 Miss. 612; *Baldwin v. Herbst*, 54 Iowa 168, 6 N. W. 257; *Commonwealth v. Petitcler*, 110 Mass. 62.

Root, J.—This action was brought by the county of Okanogan and its board of commissioners against respondent, to have a certain "strip of land sixty feet in width . . . adjudged and decreed to be vested in the general public, and in plaintiffs for the use and benefit of the general public, as a public highway and wagon road," and to enjoin respondent from in any manner interfering with or obstructing said highway, and to abate certain fences erected by respondent across said right of way, and to perpetually enjoin her from setting up or claiming any right, title, or interest in and to any of said strip

of land, as against the general public in its use of the same as a public highway and wagon road. To appellants' complaint, a general demurrer was interposed, and, by the trial court, sustained. Appellants electing to stand upon their complaint, the action was dismissed. From the judgment of dismissal, appeal is taken to this court.

Respondent, on or about the 19th day of December, 1901, made original homestead entry upon the lands across which the wagon road in controversy runs. For seven years or more prior to said date, the roadway herein involved had been continuously used as a public highway by people living in that part of the country; but no public funds had ever been expended thereupon—the road having been laid out and improved and kept up by voluntary work and expense. On the 11th day of August, 1903, the board of county commissioners of Okanogan county adopted and entered a resolution to the effect,

"That the right of way for the construction of highways over public lands, as granted by act of Congress (§ 2477, Revised Statutes) be and the same is hereby accepted, as far as said grant relates to said Okanogan county, state of Washington; that is to say, to the extent of thirty feet on each side of the center line of all wagon roads which now exist, or which have heretofore existed, upon or across or over lands that are now public lands of the United States, not reserved for public uses in said Okanogan county."

This resolution was adopted in view of the act of the legislature of this state, approved March 14, 1903, wherein and whereby boards of county commissioners are authorized to accept highways, as granted by § 2477 of the Revised Statutes of the United States. Laws 1903, p. 155. This resolution of the board of commissioners seems to have been adopted without notice to this respondent. Appellants contend that § 2477 of the Revised Statutes

constitutes a grant *in praesenti,* and that it becomes effective as to any particular strip of land as soon as the same is used for highway purposes, and without any formal action on the part of the state, county, or other authorities. Respondent contends that, as her homestead entry was made before this strip had been used as a highway for the period of ten years, and before the county commissioners had adopted the resolution referred to, she had rights paramount to those seeking to use said strip as a highway, and that the action of the public in using said roadway, and the action of the county commissioners in adopting said resolution, were insufficient to deprive her of the right of control over said strip of land. Relying upon this contention, she had caused a fence to be erected across said roadway, thereby preventing the use of the same for travel. Section 2477 of the Revised Statutes, above referred to, is as follows: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

The exact questions presented by this record have not heretofore been adjudicated in this court. But questions quite similar claimed the court's attention in the case of *Smith v. Mitchell,* 21 Wash. 536, 58 Pac. 667, 75 Am. St. 858—the main distinction between that case and this being that in said case the road in question had been in use for a period of ten years prior to the homestead entry, while here it was only seven. Referring to § 2477, and the question of the establishment of highways by prescription and user, this court, speaking by Chief Justice Gordon, said:

"In this state the establishment of highways by prescription is recognized, and roads may be established *by use* as well as by proceedings under the statute. It is a well known fact that many of the public highways in this state had their inception in adverse user, which ripened

into prescription. The act of Congress already referred to does not make any distinction as to the methods recognized by law for the establishment of a highway. It is an unequivocal grant of right of way for highways over public lands, without any limitation as to the method for their establishment, and hence a highway may be established across or upon such public lands in any of the ways recognized by the law of the state in which such lands are located; and in this state, as already observed, such highways may be established by prescription, dedication, *user,* or proceedings under the statute. Any other conclusion would occasion serious public inconvenience."

It will be noticed that the right to establish a highway by "user" is here expressly avowed.

The United States supreme court, in construing many of the grants of land made to railway companies, has invariably held that the same were grants *in praesenti,* and that they attached to the land as soon as definite location was established. In the case of *Railroad Co. v. Baldwin,* 103 U. S. 426, 26 L. Ed. 578, that court, speaking by Mr. Justice Field, said:

"The language of the act here, and of nearly all the congressional acts granting lands, is in terms of a grant *in praesenti.* The act is a present grant, except so far as its immediate operation is affected by the limitations mentioned. 'There is hereby granted' are the words used, and they import an immediate transfer of interest, so that when the route is definitely fixed the title attaches from the date of the act. . . . This is the construction given by this court to similar language in other acts of Congress. *Missouri, Kansas & Texas Ry. Co. v. Kansas Pacific Ry. Co.,* 97 U. S. 491; *Leavenworth, Lawrence & Galveston Ry. Co. v. United States,* 92 Id. 733. . . . Nor is there anything in the policy of the government with respect to the public lands which would call for any qualification of the terms. Those lands would not be the less valuable for settlement by a road running through them.

On the contrary, their value would be greatly enhanced thereby."

The foregoing was said by the court with reference to the sections of land granted—the act providing that, where portions of land should be settled upon before the location of the road, other lands should be given the railway company in lieu thereof; and, in the same opinion, in speaking of the "right of way," the court held that, when the location was definitely made, the title should date from the passage of the act, even though settlers may have rightfully entered said lands under the laws of the United States in the meantime—the court saying:

"We are of opinion, therefore, that all persons acquiring any portion of the public lands, after the passage of the act in question, took the same subject to the right of way conferred by it for the proposed road."

The decisions of said court in many other cases are of like import.

In considering said §2477, the supreme court of South Dakota, in the case of *Wells v. Pennington County,* 2 S. D. 1, 48 N. W. 305, 39 Am. St. 758, said:

"The language of section 2477, Revised Statutes of the United States, indicates a grant *in praesenti.* Its words: 'The right of way for the construction of highways over public lands not reserved for public use is hereby granted,' —import an immediate transfer of interest, not a promise of a transfer in the future. As to the intent of Congress in this enactment granting the right of way to cross the public lands there can be no reasonable doubt. The object of the grant was to enable the citizens and residents of the states and territories where public lands belonging to the United States were situated to build and construct such highways across the public domain as the exigencies of their localities might require, without making themselves liable as trespassers. And when the location of the highway and roads was made by competent authority or by public use, the dedication took effect by relation as of the

date of the act; the act having the same operation upon the lines of the road as if specifically described in it."

In the case at bar, the respondent urges that there is a distinction between grants of lands and rights of way to railways, and the grant of highways in said § 2477, in that those to the railway companies conveyed the fee, whereas the grant for the construction of highways in § 2477 authorizes merely an easement. In the case last cited, the court addresses itself to this proposition, in the following language:

"While in these grants the fee to the land was intended to be transferred to the railroad companies by their grants and the act under consideration [said § 2477] is only a dedication or giving a right of way, yet the principles governing the construction of the words 'is hereby granted' are the same."

After citing many cases, the court further says:

"The foregoing were cases of grants to railroad companies, but . . . the principles therein enunciated are applicable to all similar congressional grants."

In the case at bar, it is contended that user is not sufficient to establish a highway across public lands which are subsequently entered under the homestead law, and that the grant is not an absolute grant, but a conditional one which must be accepted by the proper authorities, and that, when not accepted until a homesteader's rights intervene, said homesteader may assert control over the land until proper steps are taken to establish the highway, as other highways are established. Objections similar to this were raised in the case last cited. Among other things, the court said:

"The parties to a dedication are the owners and the public; and it must be remembered that the public is an ever-existing grantee, capable of taking dedications for public uses, and its interests are a sufficient consideration

44-37 WASH.

to support them.   .   .   .   It may, however, be admitted
that the right acquired by the territory or the public was
necessarily imperfect until the land accepted for high-
ways was surveyed, and capable of identification;  .  .  .
*Railroad Co. v. Price Co.,* 133 U. S. 496, 10 Sup. Ct.
341."

As to user by the public constituting an acceptance of a
dedication for highway purposes, the "Cyc.," Val. 13, at
page 465, says:

"An offer of dedication, to bind the dedicator, need not
be accepted by the city or county, or other public authori-
ties, but may be accepted by the general public—to deny
this would be to deny the whole doctrine of dedication.
The general public accepts by entering upon the land and
enjoying the privileges offered—or briefly, by user.  Ex-
cept when user is relied on to raise a presumption of dedi-
cation the duration of the user is wholly immaterial.  It
is not necessary that such user should continue any
definite length of time.   .   .   ."

In the case at bar, the general public having used this
highway for a period of seven years before respondent
entered the land as a homesteader, we think such user
constituted an acceptance of the grant made by Con-
gress in § 2477.  We do not think there was a necessity
of said user existing for a period of ten years.  It is not
a matter of prescription, but of acceptance of a grant.
Under the authorities cited, and many others bearing upon
the same question, there can be little question about this
grant having been one *in praesenti.*  The resolution adopted
by the board of county commissioners we do not think
essential to an acceptance.  The public had already ac-
cepted by actual, continuous user.  The board's action
was, however, appropriate as indicating the extent of the
land to be claimed for the highway which had already
been thus established.  The statute authorized the county
commissioners to accept a strip of land not less than thir-

ty nor more than sixty feet in width. The resolution accepted all such grants within the county to the extent of sixty feet in width. In the statute of March 14, 1903, above referred to, the section authorizing the commissioners to accept the rights of way granted by Congress in § 2477, has this proviso:

"Provided, That nothing herein contained shall be construed to invalidate the acceptance of such grant by *general public use and enjoyment,* heretofore or hereafter had."

This language indicates clearly that the legislature was acting upon the theory that the grant of Congress could be accepted by "general public use and enjoyment." Consequently, there was nothing in this statute controverting the doctrine of acceptance by user. It would seem to be appropriate that homesteaders and other claimants upon government land, across which highways have been established by user, should be heard as to the amount of land taken when the county assumes control of these roads. In the case of *Yakima County v. Conrad,* 26 Wash. 155, 66 Pac. 411, wherein the facts were somewhat similar to those herein, the court fixed the width of the road at forty feet. That case was prior to the statute of 1903, and of course the commissioners had not adopted any such resolution as was done in the case at bar.

We do not think there is anything to prevent the respondent in this, or any similar case, from appearing before the county commissioners, and being heard upon the question of reducing the width of the highway to less than sixty feet, and nothing to hinder the commissioners from considering and acting upon a petition of such a party, and granting the same, if, in their judgment, the interests of the county and public would be subserved by a highway of less width. It could not, however, be reduced to

less than thirty feet. In the settlement of the public lands in a young state, it is necessary, frequently, that highways be laid out across the public domain; and it was in recognition of this necessity that Congress enacted § 2477. The very nature of conditions in an unsettled, or sparsely settled, locality is such that roadways must be frequently laid out by the early settlers without much regard to section lines, or to the location of future homesteads or other claims. When these roadways become used generally by the public as highways, it would be unreasonable and inconsistent to hold that any action should be required of the authorities in order is constitute an acceptance of the grant of Congress made as aforesaid. There is, of course, nothing to prevent making changes in their location in the same manner as such are made in other public highways.

The judgment is reversed, and the cause remanded, with instructions to overrule the demurrer to the complaint, and to proceed with the case in a manner not inconsistent with this decision.

MOUNT, C. J., CROW, RUDKIN, and DUNBAR, JJ., concur.

FULLERTON and HADLEY, JJ., took no part.