[No. 6806.   Decided February 18, 1908.]

PORTLAND AND SEATTLE RAILWAY COMPANY, *Respondent*, v.
CLARKE COUNTY, *Defendant*, and COLUMBIA
CONTRACT COMPANY, *Appellant*.[1]

EVIDENCE—DOCUMENTARY—MAPS.  In a condemnation proceeding,
maps showing the location of the railroad are admissible as illustra-
tive of the evidence of the witnesses, where they are shown to be
accurate by witnesses who had scaled the maps and compared them
with the government field notes, although such witnesses had not
surveyed the ground or made the maps.

EMINENT DOMAIN—HIGHWAYS—ESTABLISHMENT.  Upon assess-
ment of damages for the condemnation of lands abutting on a public
highway, it is immaterial whether the owner's rights in the use of
the roadway are based upon establishment of the highway by pre-
scriptive use or by dedication.

SAME—TRIAL—INSTRUCTIONS—CONSISTENCY.  In such a case, an
instruction that no owner of land adjoining a public highway has a
right to interfere with public travel, and an instruction that he may
make temporary and reasonable use thereof for the purpose of load-
ing and unloading goods, are not prejudicially inconsistent, when
construed together.

SAME—DAMAGES—INSTRUCTIONS—VALUE OF LANDS.  In proceed-
ings to condemn a railroad right of way through lands upon which
there was a stone quarry on a bluff adjacent to a highway, it is
proper to refuse to instruct that there was no evidence that the
highway depreciated the value of the lands, where it appeared that
care was required in blasting in the quarry near the highway, and
it was claimed by defendants that much greater care would be neces-
sary in blasting after construction of the railway.

SAME—ADEQUACY OF DAMAGES—REVIEW.  A verdict for $15,000
damages for land taken for a railroad right of way will not be set
aside on appeal as inadequate, where there was much conflict in the
evidence, the jury and judge viewed the premises, and the trial
court denied a motion for a new trial, and the verdict appears to do
substantial justice.

Appeal by a defendant from a judgment of the superior
court for Clarke county, McCredie, J., entered December 31,

[1]Reported in 93 Pac. 1083.

1906, upon the verdict of a jury awarding damages in a condemnation proceeding. Affirmed.

*Teal & Minor* and *Donald McMaster*, for appellant.

*A. L. Miller* and *James B. Kerr*, for respondent.

MOUNT, J.—This appeal is from an award of damages in condemnation. The respondent condemned a right of way for railway purposes across certain lands of the appellant. The question of damages was tried to the court and a jury, and a verdict was returned in favor of the appellant for $15,000. The strip of land taken lies along the north bank of the Columbia river between the river and a steep bluff. The appellant for several years last past has operated a stone quarry along the face of the bluff. The stone was carried from the bluff to the river by means of tramways. The right of way of the railway company lies between the bluff and the river. A public road passes over the appellant's premises between the bluff and the river, crossing the right of way near the west end of the premises and paralleling the right of way on the side next to the bluff, until near the east end where the road comes in contact with the right of way, and from there on is included within the right of way. The tramways above mentioned cross the right of way and the wagon road on trestles built sufficiently high so as not to interfere with either the roadway or the operation of the railway trains. Appellant alleges that the court erred in receiving in evidence certain maps similar to those in the case of *Portland & Seattle R. Co. v. Ladd*, 47 Wash. 88, 91 Pac. 573. The point made in this case is identical with the one made there. For the reasons there stated, it was not error for the court to receive these maps in evidence.

At the request of the respondent, the court instructed the jury, as follows:

"A public road may be established in this state by user. It is the law of this state that any road or highway which has

been continuously, openly, notoriously, and adversely used as a public road or highway by the general public under a claim of right for ten years, where the same has been worked and kept up at the expense of the public, is a lawful road or highway, and the public has a right to pass to and from thereon.  If you find from the evidence that a public road exists below the quarries referred to in the evidence, you are entitled to take that fact into consideration in determining the damages which will be sustained by the claimants by the taking of a strip of land which is necessary for the railroad right of way.  No owner of land adjoining a public highway has a right to interfere with public travel upon such highway. If, therefore, you find that a public highway exists below the quarries in question, you may consider whether the taking of a right of way by the railroad company will interfere with the manner in which the claimant is now entitled to operate its stone quarries.  Where a public road or highway exists and slight changes have been made in portions thereof, the remainder of such road still continues to be a public road or highway and the rights are the same therein as if such changes had not been made, provided, of course, the travel is substantially the same as before the making of such changes. You are instructed that when a public road or highway has been established, either by user or otherwise, it remains such public road until vacated according to law, or until abandoned for the time fixed by the statute, and no person has a right to change such road unless such change is directed or consented to by the authorities having charge of such road."

At the request of the appellant, the court charged the jury as follows:

"If you find that a highway or county road has been established over the claimants' lands, the claimants as the owners of said lands have, notwithstanding the establishment of the highway or county road, the exclusive right to the soil, subject only to the easement of the right of passage in the public and the incidental right of properly fitting the highway or county road for public use.  Subject only to the easement or right of passage, and the incidental right of. properly fitting the highway or county road for use, which is vested in the public, the proprietor of the soil, the claimants in this

case, has all the usual rights and remedies of the owner of the freehold. The owner of lands abutting upon a highway or county road, such as the claimants in this proceeding, has the right to sink drains and put in subways, carry pipes, and use the soil of such highway or county road for any lawful purpose so long as he shall maintain the surface so that it may be safe and convenient for the passage of the public. The owner of lands abutting on a highway or county road, such as the claimants in this proceeding, may also build overhead crossings, tramways and bridges over the highway or county road, and maintain and use the same for any lawful purpose so long as the same do not render the passage of the public on such highway or county road unsafe or inconvenient. The owner of lands abutting on a highway or county road, such as the claimants in this proceeding, may use the highway or county road for the purpose of loading and unloading goods, merchandise, and other things bought for use or for sale on his lands, and for the purpose of loading the produce of his lands, or building or other materials thereon, or of taking the same therefrom, so long as he does not use the highway or county road for such purposes for an unreasonable time and so long as such use is temporary and he does not obstruct the highway or county road for an unreasonable period. He may even temporarily encroach upon the highway or county road for such purpose, and the use of the highway or county road by the public for travel may be temporarily interfered with by him in this way, but such use must be temporary and reasonable. The owner of lands abutting on a highway or county road, such as the claimants in this proceeding, may blast stone and other substances on his lands in close proximity to such highway or county road, or fell timber on his said lands, even though some stone or material may be thrown upon the highway or county road; but he must restore the highway or county road with reasonable dispatch, and remove the stone or material thrown thereon, and not permit the public travel to be unreasonably interfered with thereby. If you find from the evidence that the public has traveled over the land described in the petition for years, I charge you that such use in law establishes a highway or county road over said lands, even though there has been no dedication or appropriation of the lands for this purpose, but the public's right to a highway or county road established by

user in this way and for such period, the width of the high-way and the extent of the servitude or public right to use the same, is limited to the ground so used and the character of the user."

The appellant also requested the court to charge the jury upon this subject as follows:

"I charge you that there is no evidence in this case from which you may find that any of the lands of the claimants described in the petition have been dedicated to or appropriated by the public for use as a public highway or county road. I instruct you, gentlemen of the jury, that there has been no evidence introduced in this cause tending to show that the wagon road over the lands of claimant does in any way affect or depreciate the value of the property in question, whether said road is or is not a county road or public highway."

It is argued, first, that the court should have told the jury that whatever rights the public have in the highway are based wholly upon user and not dedication by the owner, for the reason that the evidence clearly shows that fact. We are inclined to agree that the evidence shows clearly the establishment of a highway by user for nearly fifty years, the only difference among the witnesses being that in certain places changes have been made by reason of necessity, the road sometimes becoming flooded or filled by debris or rock placed in the road by the operation of the stone quarry by the agents of the appellant. There seems to have been no dispute that the wagon road was there. Whether it was established by user or by dedication could therefore make no difference.

"The fact of the existence of a public highway may be established by any competent evidence, and there is no distinction in the validity of either method of the establishment of a public highway in this state." *State v. Horlacher*, 16 Wash. 325, 47 Pac. 748.

Appellant also argues that the instructions given are inconsistent with each other. It is true the court told the jury

33—48 WASH.

that "no owner of land adjoining a public highway has a
right to interfere with public travel upon such highway,"
and thereafter that "the owner of lands abutting upon a high-
way . . . may use the highway . . . for the pur-
pose of loading and unloading goods . . . so long as
such use is temporary . . . but such use must be tempor-
ary and reasonable," etc. These instructions must all be con-
strued together, and so construed we think they are not sub-
ject to the criticism that they are inconsistent. If any error
is shown, it is not error prejudicial to the appellant.

It is next argued that the court should have instructed the
jury that there was no evidence that the wagon road over
the appellant's lands affected or depreciated the value of the
lands. We think it was not error to refuse this instruction, be-
cause the appellant claimed at the trial that great damage
would result by the construction of the railway, for the rea-
son that blasting operations would be largely interfered with,
and much greater care would be required to prevent stone from
injuring trains and the railway. The wagon road which lies
between the railway and the quarry would, of course, necessi-
tate some care to prevent injury to travelers, and would tend
for that reason to lessen the value of the property as a
quarry. The jury certainly had a right to consider this fact
so as not to charge against the railway the whole expense of
extraordinary care in the operation of blasting or in the op-
eration of the stone quarry. There were other reasons of a
like nature, but the one just stated justified the court in re-
fusing the requested instruction.

Appellant next argues that the verdict was too small.
There was great diversity of opinion among the many wit-
nesses as to the amount of damages caused by the taking of
the right of way and the construction of the railway. The
question was properly one for the jury. The jury heard all
the evidence, viewed the premises, and was properly instructed
as to the measure of damages. The trial judge accompanied

the jury upon the view, heard all the evidence, and was familiar with all the facts in the case, and after verdict, denied a motion for new trial. After reading the record, we are satisfied that the verdict returned is not too small, but that it does substantial justice between the parties.

The judgment must therefore be affirmed.

DUNBAR, ROOT, and RUDKIN, JJ., concur.

HADLEY, C. J. and CROW, J., took no part.